# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS CO. INC.,<br><br>     Plaintiff,<br><br>v.<br><br>ASSOCIATED GROCERS, INC.; and DOES 1 through 10 inclusive.<br><br>     Defendants. | C.A. No.: _____ |

## COMPLAINT

Plaintiff, Adlife Marketing & Communications Company, Inc. ("Adlife" or "Plaintiff"), complains against Associated Grocers, Inc., and DOES 1 through 10, inclusive (collectively "Associated Grocers" or "Defendant") as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief against Defendant for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and breach of contract.

2. This Court has subject matter jurisdiction under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 1338(a) (copyright).

3. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is a diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. Plaintiff is a corporation organized under the laws of the State of Rhode Island with corporate headquarters

in Rhode Island. Upon information and belief, Defendant is a corporate entity organized under the laws of the state of Louisiana with corporate headquarters in Louisiana. The matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Personal jurisdiction exists over Defendant because Defendant has voluntarily submitted to personal jurisdiction in the state of Rhode Island by contractual agreement. Personal Jurisdiction also exists over Defendant because Defendant directed its conduct towards Rhode Island and has wrongfully caused Plaintiff injury in the state of Rhode Island.

5. Venue is proper because Defendant has voluntarily agreed to venue in this judicial district, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant caused injury to Plaintiff in this judicial district.

## **PARTIES**

6. Plaintiff Adlife Marketing & Communications Co. Inc. ("Adlife") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

7. Upon information and belief, Defendant is a corporate entity organized under the laws of the state of Louisiana with a place of business at 8600 Anselmo Lane, Baton Rouge, LA 70810.

8. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and on that basis alleges that such fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the conduct of said Defendants. Plaintiff will seek to amend the complaint when the names and capacities of such fictitiously

named Defendants are ascertained. As alleged herein, "Defendant" shall mean all named Defendants and all fictitiously named Defendants.

## STATEMENT OF FACTS

### *Adlife and the Photographs Forming the Subject Matter of This Complaint*

9. Adlife is an advertising and marketing agency whose team of seasoned professionals has, for decades, provided elite branding services to its clientele. With its innovative marketing campaigns and its production of high quality printed pieces such as retail circulars, signage, pamphlets and more, Adlife enables its clients to build a brand through compelling visual arrangements.

10. For decades, Adlife has created, artistically arranged and professionally produced a library of still images of food and other grocery items. Adlife's library now consists of approximately 30,000 photos. The photographs are high-resolution, artistically rendered with pleasing angles and selective lighting, color-corrected and color-separated, which makes them particularly valuable as, when used together, they provide color consistency.

11. For valuable consideration, Adlife has licensed the rights to reproduce, distribute and publicly display its copyrighted photographs, or derivative versions thereof, to other advertising agencies and retailers.

12. Adlife is the holder of all rights, title and interests in and to said food photographs, which form the subject matter of this dispute (the "Copyrighted Food Photographs").

13. Adlife has registered these Copyrighted Food Photographs with the United States Copyright Office, and the registrations have been accepted and registration certificates issued to Adlife.

### *Defendant Associated Grocers Inc.*

14. Founded in 1950 as a central procurement warehouse for independent retail grocers in the Baton Rouge area, Defendant Associated Grocers now services

3

over 170 retailers in three states with a full array of retail operations support services. *See* http://www.agbr.com/store-locator/

15. Associated Grocers distributes regular print advertising circulars to thousands of households to promote the food products available at its retail store affiliates.

16. Associated Grocers' print circulars consist primarily of prominently displayed food images accompanied with name and pricing information. In addition to print circulars, digital versions are also distributed online.

17. According to a 2017 Nielsen Homescan study, about 80% of U.S. households still use circulars and other traditional, printed sources for information about retail store products and offerings. Attached hereto as Exhibit A is a true and correct news article from Nielsen Homescan explaining the results of its study.

### *Adlife's Distribution of its Copyrighted Food Photographs*

18. Adlife currently offers its entire library of Copyrighted Food Photographs for licensing through a monthly subscription service to its website www.PreparedFoodPhotos.com.

19. Subscribers to www.PreparedFoodPhotos.com pay a negotiated rate for access to Adlife's library. A current subscription to Adlife's library through www.PreparedFoodPhotos.com would cost between $999 and $5,000 per month depending upon a variety of factors including, among other factors, the number of locations supported by each subscriber.

20. Adlife does not currently license its Copyrighted Food Photographs by any other means.

21. Subscribers who wish to purchase a subscription to www.PreparedFoodPhotos.com typically enter into a formal "End-User Subscription Agreement" which is negotiated between Adlife and the subscriber, and which sets forth the agreed upon terms for which the subscriber will be able to

access and use Adlife's Copyrighted Food Photographs.

22. Each "End-User Subscription Agreement" provides a set term for each subscription, typically one year, and provides a mechanism for the subscriber to renew the subscription term or cancel the subscription.

23. Additionally, each "End-User Subscription Agreement" expressly states that the subscriber must immediately cease all use of the Copyrighted Food Photographs upon the expiration or termination of the subscription term, and also provides for set monetary penalties for unauthorized use of Adlife's Copyrighted Food Photographs.

### *Associated Grocer's Willful Conduct*

24. On or about January 27, 2017, Associated Grocers entered into a formal "End-User Subscription Agreement" ("License Agreement") with Adlife to be able to access and use Adlife's Copyrighted Food Photographs.

25. Associated Grocers' executed License Agreement with Adlife contained the following relevant provisions:

> Adlife has developed and maintains an Internet based subscription program allowing subscribers full access to stock photography on the website for the specific purposes of advertising subject to the conditions in this Agreement (the "Services") …
> …
>
> 1. **License Grant**
>
>> a) **License to Use Services.** Adlife hereby grants to Subscriber a nonexclusive, nontransferable, license during the Term (the "License") to access and use the Services in accordance with this Agreement. …
>>
>> …UPON TERMINATION OF THIS AGREEMENT, SUBSCRIBER AND ITS END-USERS SHALL IMMEDIATELY CEASE USE OF ANY AND ALL ADLIFE IMAGES …
>> …
>
> 4. **Term, Suspension, and Termination.**
>
>> a) **Term.** Unless terminated earlier pursuant to this Section 5 of this Agreement, the initial term ("Initial Term") of this Agreement shall be for a period of twelve (12) months from the Effective Date and shall thereafter automatically continue under this agreement annually, for

> successive twelve-month (12) periods ("Subsequent Term") unless either Party provides a thirty-day (30) written notice of termination …
>
> …
>
> 5. **Fees and Payment.**
>
> …
>
> e) **Exclusive, Unlicensed, and Prohibited Use.** … Any unlicensed or prohibited use of any Adlife photography will carry with it a minimum penalty of at least $8,000 per image, per medium/channel of use.
>
> 6. **Additional Miscellaneous Provisions.**
>
> …
>
> f) **Amendment.** … this Agreement may be modified only in writing, signed by a duly authorized representative of each Party.

26. Attached as Exhibit B is a true and correct copy of the License Agreement between Associated Grocers and Adlife.

27. After the initial one year term the License Agreement expired in January of 2018, the License Agreement automatically renewed for a subsequent one-year term per paragraph 4(a).

28. In January of 2019, the License Agreement again automatically renewed for another one year term.

29. On February 28, 2019, a representative of Adlife, sent an email to Carrie Stanley, the director of Advertising and Marketing at Associated Grocers with an attached invoice for the subscription fee due under the License Agreement.

30. On March 14, 2019, Stanley responded stating that Associated Grocers no longer needed its subscription with Adlife and had "discontinued using the artwork to avoid any issues moving forward." Associated Grocers did not pay the invoice.

31. Attached hereto as Exhibit C is a true and correct copy of the email correspondence with Stanley.

32. On April 17, 2019, Adlife president Joel Albrizio sent an email to Stanley regarding Associated Grocers' request to cancel its License Agreement. In

the email, Albrizio noted that Associated Grocers had not given the 30-day written notice of cancellation prior to the renewal of the License Agreement. Despite that, Albrizio stated that based on Associated Grocers' representations that it had stopped using Adlife's Copyright Food Photographs that Adlife would agree to voluntarily waive the 30-day notice period and allow Associated Grocers to retroactively cancel from the date that it stopped using its subscription.

33. Albrizio attached to his email a proposed amendment to the License Agreement ("Amendment") memorializing the cancellation and invited Stanley to handwrite in the date of termination as Albrizio did not know when Associated Grocers had stopped using the Copyrighted Food Photographs.

34. On April 18, 2019, Stanley responded by stating that she would review the amendment and that, to her knowledge, Associated Grocers had ceased using the Copyrighted Food Photographs in December of 2018 because it knew that it was not going to renew the License Agreement, but that it had overlooked its obligation to notify Adlife of the cancellation.

35. Attached hereto as Exhibit D is a true and correct copy of the email correspondence between Albrizio and Stanley.

36. On April 24, 2019, Stanley returned an executed copy of the Amendment filling in the date of January 27, 2019 as the termination date of the License Agreement.

37. As part of the Amendment, Associated Grocers agreed to cease all use of Adlife's Copyrighted Food Photographs and agreed that any use of the Copyrighted Food Photographs occurring after the termination date chosen by Associated Grocers would be considered unauthorized.

38. Attached hereto as Exhibit E is a true and correct copy of the executed Amendment.

39. Subsequently, Adlife discovered that Associated Grocers continued to

use a number of Adlife's Copyrighted Food Photographs in print and online circulars despite the termination of the License Agreement.

40. As of the date of this Complaint, Adlife has identified 33 of its Copyrighted Food Photographs appearing in circulars dated March 15, 2019 to April 26, 2019 prepared under the direction of Associated Grocers for a total of 184 separate uses in both print and online media.

41. On information and belief, Associated Grocers has continued to use additional Copyrighted Food Photographs that have yet to be identified by Adlife including in circulars dated for May and June. Adlife will amend its complaint once the totality of Associated Grocers' infringing actions are ascertained.

42. Attached hereto as Exhibit F is a spreadsheet containing information about the Copyrighted Food Photographs at issue.

43. Attached hereto as Exhibit G are true and correct records of a license audit performed by Adlife showing Associated Grocers' continued unauthorized use of Adlife's Copyrighted Food Photographs occurring after the termination date of the License Agreement.

44. Such use of the Copyrighted Food Photographs after the expiration of the term of the License Agreement is not authorized by Adlife.

45. Per paragraph 5(e) of the License Agreement, Associated Grocers has agreed that its unauthorized usage of Adlife's Copyrighted Food Photographs carries with it a minimum penalty of at least $8,000 per image, per medium or channel of use.

46. Based on the fact that Associated voluntarily cancelled its subscription under the License Agreement with knowledge that it was obligated to immediately cease all use of Adlife's Copyrighted Food Photographs, its continued use of Adlife's Copyrighted Food Photographs is knowing and willful.

47. Associated Grocers' use of the Copyrighted Food Photographs for

advertising and promotional purposes is irrepressibly commercial.

48. Said use has and continues to generate revenue for Associated Grocers by luring clientele with high-quality food stills, thereby increasing demand for Associated Grocers' retail products.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101** *et seq.*

49. Adlife incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. Adlife is the owner of all rights, title, and interest in the copyrights to the Copyrighted Food Photographs, which are original works of authorship subject to copyright protection under the laws of the United States.

51. Adlife's Copyrighted Food Photographs have been registered with the United States Copyright Office and perfected registration certificates have been issued.

52. Associated Grocers has directly, vicariously, contributorily and/or by inducement willfully infringed Adlife's copyrights by reproducing, displaying, distributing, and utilizing the Copyrighted Food Photographs for purposes of trade in violation of 17 U.S.C. § 501 *et seq.* despite representing that it had ceased use of the Copyrighted Food Photographs and knowing that it had cancelled its License Agreement effective January 27, 2019.

53. Associated Grocers has willfully infringed, and unless enjoined, will continue to infringe Adlife's copyrights by knowingly reproducing, displaying, distributing, and utilizing the Copyrighted Food Photographs for purposes of trade.

54. All Associated Grocers' acts are and were performed without Adlife's permission, license, or consent.

55. Adlife has identified at least 184 instances of infringement on at least 33 of its Copyrighted Food Photographs by way of unlawful reproduction and

display.

56. On information and belief, Associated Grocers has further infringed in materials not yet available to Adlife due to the absence of discovery. If and when other infringements are determined and discovered in this case, Adlife expressly reserves the right to amend the pleadings to include additional acts of infringement as needed.

57. The said wrongful acts of Associated Grocers has caused, and are causing, great injury to Adlife, which damage cannot be accurately computed, and unless this Court restrains Associated Grocers from further commission of said acts, it will suffer irreparable injury, for all of which it is without an adequate remedy at law.

58. Accordingly, Adlife seeks a declaration that Associated Grocers is infringing its copyrights and an order under 17 U.S.C. § 502 enjoining Associated Grocers from any further infringement of its copyrights.

59. As a result of Associated Grocers' violations of Title 17 of the U.S. Code, Adlife is entitled to recover damages in the form of any actual damages and disgorgement of profits pursuant to 17 U.S.C. §504(b), or statutory damages in an amount up to $150,000.00 per infringement pursuant to 17 U.S.C. § 504(c).

60. As a result of Associated Grocers' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C § 505 from Associated Grocers.

61. Adlife is also entitled to injunctive relief to prevent or restrain infringement of its copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
**Against all Defendants**

62. Adlife incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

63. Adlife and Associated Grocers are parties to the License Agreement and the Amendment.

64. Adlife fully performed its obligations under the License Agreement and Amendment.

65. As part of the License Agreement and Amendment, Associated Grocers agreed that it would immediately cease using Adlife's Copyrighted Food Photographs once the term of the License Agreement expired.

66. Associated Grocers breached the License Agreement by, among other things, continuing to use Adlife's Copyrighted Food Photographs despite the fact that the term of the License Agreement had expired.

67. Adlife has been damaged by Associated Grocers' breach in an amount to be proven, but not less than the contractually agreed upon amount of $8,000 per image per medium or channel of use.

## **PRAYER FOR RELIEF**

WHEREFORE, Adlife requests judgment against Associated Grocers as follows:

1. Associated Grocers and its officers, agents, servants, employees, and representatives, and all persons in active concert or participation with Associated Grocers be permanently enjoined from copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all Copyrighted Food Photographs of Adlife;

2. The Court enter a seizure order directing the U.S. Marshal to seize and impound all items possessed, owned or under the control of Associated Grocers, their officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon Adlife's copyrights, including but not limited to any and all broadcasting materials, advertising materials, print media, signs, Internet web sites, domain names,

computer hard drives, servers or any other media, either now known or hereafter devised, bearing any image which infringes, contributorily infringe, or vicariously infringes upon Adlife's copyrights in the Copyrighted Food Photographs as well as all business records related thereto, including, but not limited to, lists of advertisers, clients, customers, viewers, distributors, invoices, catalogs, and the like;

    3.    An accounting be made for all profits, income, receipts or other benefit derived by Associated Grocers from the unlawful reproduction, copying, display, promotion, distribution, or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringes upon Plaintiff's copyrights pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

    4.    Actual damages and disgorgement of all profits derived by Associated Grocers from its acts of copyright infringement to reimburse Adlife for all damages suffered by it by reasons of Associated Grocers' acts, under 17 U.S.C. §§ 504 (a)(1), or in the alternative and at Adlife's election, statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) and (c);

    5.    Reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. § 505 or otherwise available by law;

    6.    Costs and interest pursuant to 17 U.S.C. §§ 504 (a)(1) and (b), 17 U.S.C. § 505, or otherwise available by law;

    7.    Compensatory damages for breach of contract in an mount to be proven but not less than the contractually agreed upon amount of $8,000 per image per medium or channel of use;

    8.    Prejudgment interest to Adlife on all amounts owed; and

    9.    Any such other and further relief as the Court may deem just and appropriate.

Dated: June 7, 2019                    Respectfully submitted,

**ADLIFE MARKETING & COMMUNICATIONS CO. INC**.

**By its Attorneys**

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
*Pro Hac Vice* pending
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

**/s/ Chip Muller**
Chip Muller, Esq. (#7686)
Muller Law, LLC
47 Wood Ave.
Barrington, RI 02806
(401) 256-5171
(401) 256-5178 facsimile
*Counsel for Plaintiff*

## **DEMAND FOR BENCH TRIAL**

Plaintiff, Adlife Marketing & Communications Inc., hereby demands a bench trial in the above matter.

Dated: June 7, 19						Respectfully submitted,

**/s/ Ryan E. Carreon**
Ryan E. Carreon, Esq.
*Pro Hac Vice* pending
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8336
(714) 597-6559 facsimile
*Counsel for Plaintiff*

**/s/ Chip Muller**
Chip Muller, Esq.
Muller Law, LLC
47 Wood Ave.
Barrington, RI 02806(714) 617-8336
(401) 256-5171
(401) 256-5178 facsimile
*Counsel for Plaintiff*